AO 106 (Rev. 04/10) Application for a Search Warrant

# UNITED STATES DISTRICT COURT
for the
District of New Mexico

FILED
UNITED STATES DISTRICT COURT
ALBUQUERQUE, NEW MEXICO

JAN 14 2013

MATTHEW J. DYKMAN
CLERK

In the Matter of the Search of )
*(Briefly describe the property to be searched* )
*or identify the person by name and address)* )
information associated with WNCHRCH@GMAIL.COM )
that is stored on premises controlled by Google, Inc. )
)

Case No. 13-MR-22

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:
See Attachment A to supporting affidavit, incorporated herein by reference.

located in the _____Northern_____ District of _____California_____, there is now concealed *(identify the person or describe the property to be seized)*:
See Attachment B to supporting affidavit, incorporated herein by reference.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
☑ evidence of a crime;
☐ contraband, fruits of crime, or other items illegally possessed;
☐ property designed for use, intended for use, or used in committing a crime;
☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. 1349 | Conspiracy |
| 18 U.S.C. 1343 | Wire Fraud |
| 18 U.S.C. 1956 | Money Laundering |

The application is based on these facts:
See attached affidavit, incorporated herein by reference.

☑ Continued on the attached sheet.
☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

Rebekah J Bott, Special Agent
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 1-14-13

*Judge's signature*

City and state: ALBUQUERQUE, NEW MEXICO

LORENZO F. GARCIA
United States Magistrate Judge
*Printed name and title*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF INFORMATION ASSOCIATED WITH WNCHRCH@GMAIL.COM THAT IS STORED AT PREMISES CONTROLLED BY GOOGLE, INC. | Case No. 13 MR-22<br><br>**Filed Under Seal** |

## AFFIDAVIT IN SUPPORT OF
## AN APPLICATION FOR A SEARCH WARRANT

I, Rebekah J. Bott, being first duly sworn, hereby depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1.  I make this affidavit in support of an application for a search warrant for information associated with certain accounts that is stored at premises owned, maintained, controlled, or operated by Google, Inc., an e-mail provider headquartered at 1600 Amphitheatre Parkway, Mountainview, CA 94043. The information to be searched is described in the following paragraphs and in Attachment A. This affidavit is made in support of an application for a search warrant under 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A) to require Google, Inc. to disclose to the government records and other information in its possession pertaining to the subscriber or customer associated with the accounts, including the contents of communications.

2.  I am a Special Agent with the Internal Revenue Service, Criminal Investigation (IRS-CI) and have been so employed since May 2006. As a Special Agent, I have received training at the Federal Law Enforcement Training Center, and graduated from the Special Agent Basic Training Program. My duties and responsibilities include investigations into possible violations of federal criminal laws, including Title 26 (Internal Revenue Code), Title 18 (Money

Laundering and other Federal crimes), and Title 31 (Bank Secrecy Act). Prior to becoming a Special Agent with IRS-CI, I was employed as a Special Agent Student Trainee for IRS-CI for approximately one year.

3. In my capacity as a Special Agent and a Special Agent Student Trainee with IRS-CI, I have conducted and participated in several financial investigations involving alleged criminal violations, written multiple affidavits in support of search warrants, and participated in the execution of search and seizure warrants, including search warrants on email accounts.

4. I received a Masters in Business Administration with a concentration in Accounting from the University of New Mexico. Prior to receiving my degree, I worked as a bookkeeper for over three years and became very familiar with standard business practice and financial records that a business entity keeps.

5. I am a licensed Certified Public Accountant (CPA) in the state of New Mexico. I received my CPA license from the New Mexico Accountancy Board in October 2008.

6. In the course of my employment with IRS-CI, I have conducted or been involved in numerous investigations of alleged criminal violations, which have included: Tax related violations (26 U.S.C); money laundering (18 U.S.C. §§ 1956, 1957); structuring cash transactions (31 U.S.C. § 5324(a)); mail fraud (18 U.S.C. § 1341); wire fraud (18 U.S.C. § 1343); and forfeiture (18 U.S.C. §§ 981, 982).

7. Unless stated otherwise, I have personal knowledge of the matters set out in this affidavit. To the extent that any information in this affidavit is not within my personal

knowledge, it was made known to me through my own review of the documents discussed in this affidavit, and through reliable sources.

8. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

9. Based on my training and experience and the facts as set forth in this affidavit, there is probable cause to believe that violations of 18 U.S.C. § 1349 (Conspiracy) 18 U.S.C. § 1343 (Wire Fraud) and 18 U.S.C. § 1956 (Money Laundering) have been committed by Rodney Chavez and others. There is also probable cause to search the information described in Attachment A for evidence of these crimes, as described in Attachment B.

## PROBABLE CAUSE

10. From approximately June 2004 through July 2008, at least 40 people (the "Investors") invested a total of approximately $7,000,000.00 into real estate holdings located Puerto Peñasco, Mexico. This investment project was designed and operated by an entity known as Puerto Peñasco Getaway LLC ("PPG"). Lured by the promise of regular interest payments to be followed by the return of the principal investment amount, many of the Investors withdrew their retirement accounts and/or life savings to invest in these properties through PPG.

11. By the spring of 2010, however, it was apparent that the PPG investment was in trouble. PPG had not paid investment interest to the Investors since April 2008 and PPG could



not afford to pay the homeowners association dues owed on the properties. For these reasons, the Investors elected to sell the properties and exit the investment.

12. For a variety of reasons, including the fact that only approximately $4,000,000 of the $7,000,000 invested with PPG was actually invested in Mexico, the Investors recognized that they would not be able to recoup the full amount of their original investment. Nonetheless, on or about March 1, 2010, Gilbert Lovato ("Lovato"), co-founder of PPG, sent an email to the Investors asking if they would take $0.30 on the dollar of their original investment. Recognizing the poor future prospects for their investment, the Investors agreed to this arrangement.

13. According to information received from Lovato, in or about November 2009, Lovato was contacted by a man claiming the identity of "Wayne Church."[1] "Church" informed Lovato that he had recently purchased the PPG investment interest of Richard Hawley, one of the original PPG investors. "Church" also informed Lovato that he was an "asset recovery specialist" and that in order to get things done sometimes "legs get broken" and he had to "cut deep". "Church" told Lovato that he should give the Investors a chance to sell the properties for $0.30 on the dollar. Although Lovato already had a tentative offer on the table to sell the properties for $0.30 on the dollar, Lovato felt threatened by "Church". Thus Lovato agreed to let Church try to sell the properties for $0.30 on the dollar for the benefit of the investors.

14. In approximately April 2010, acting on behalf of the Investors, Lovato appointed "Church" to sell the properties in Puerto Peñasco. As previously discussed, "Church" agreed to give the investors $0.30 on the dollar of their original investment. To facilitate this arrangement,

---

[1] In fact, later investigation determined that the individual identifying himself as "Wayne Church" was in fact Rodney Chavez.

4



Lovato gave "Church" a power of attorney, which would allow him to sell the properties for the benefit of the Investors.

15. Ostensibly in order to pay closing costs and expenses associated with the sale of the properties, from approximately April 2010 through March 2011, "Church" contacted the Investors and collected at least $40,000.00 from them. In connection with this request, "Church" told several investors they would receive their investment funds as soon as he paid closing costs and received the funds from the sale of the properties. Some investors gave "Church" funds with which they had intended to pay their home mortgage in hopes of recouping at least a part of their initial investment in PPG.

16. In order to sell the properties "Church" retained a real estate agent based in Arizona who also deals in properties located in Puerto Peñasco.

17. The investigation has revealed that in October 2010, two lots, commonly referred to as the "Cholla Bay lots" were sold. On October 26 and 29, 2010, the proceeds of the sale ($7,500 and $7,470 respectively) were wired to Peoples Bank account number 40703478 located in Albuquerque, New Mexico. This account is held in the name of Inspirational Equities. The signor on the account is Rodney Chavez ("Chavez"). Soon after receiving this money, Chavez used various means, including cash withdrawals, bank checks and transfers to other individuals and entities, to withdraw all of the funds from this account.

18. The investigation has revealed that in December 2010, another one of the properties commonly known as Villa 16, was sold. On December 15, 2010, the proceeds of the sale ($353,289.21) were wired to the same Peoples Bank account described in paragraph 17 above. Soon after, Chavez transferred over $285,000.00 of the funds to several other accounts



held in the names of various nominee entities, all of which are controlled by Chavez, Church and their associates, including Joshua Ellis and Alicia Gallegos.

19. The investigation has revealed that in February 2011, another property known as Las Palmas Bonita 702, was sold. On February 15, 2011, the proceeds of the sale ($135,350.97) were wired to the same Peoples Bank account describes in paragraph 17 above. Soon after receiving this money, Chavez used various means, including cash withdrawals, banks checks and transfers to other individuals and entities, to withdraw approximately $82,000 of the funds from this account.

20. The investigation has revealed that in April 2011, another two properties known as Las Palmas Bonita 701 and 703, were sold. On April 22, 2011, the proceeds of the sale ($343,760.34) were wired to the same Peoples Bank account described in paragraph 17 above. Soon after receiving this money, Chavez used various means, including cash withdrawals, banks checks and transfers to other individuals and entities, to withdraw approximately $208,000 of the funds from this account.

21. Your Affiant has done an analysis of the account statements related to Peoples Bank account number 40703478, under the name Inspirational Equities, and has compared it to a list of PPG Investors, and has concluded that none of the Inspirational Equities payees are PPG Investors.

22. Instead of paying the proceeds of the property sales to the Investors, Chavez moved the funds to several accounts in nominee names, wired the funds to family members, withdrawn the funds in cash, withdrawn the funds in bank checks, and transferred the funds into their personal accounts. Among the individuals and LLCs who ultimately received the proceeds

6



from the sale of the Puerto Peñasco properties are Joshua Ellis, Alicia Gallegos and Shadow Systems LLC, an LLC controlled by Rodney Chavez.

23. In the course of this investigation, IRS received information, including emails from the real estate broker who sold the Puerto Peñasco properties. *See* ¶ 16, *supra*. These emails reveal that on or about June 7, 2010, the email account WNCHRCH@GMAIL.COM was used to send an email to Joshua Ellis containing meeting minutes for the LLC that held the Puerto Peñasco properties. This email was then forwarded to the Arizona based real estate agent who ultimately brokered the sale of the properties. WNCHRCH@GMAIL.COM is registered in the name of Wayne Church. However, the context and content of the emails, as well as other information received in the course of the investigation strongly suggests that the email account is in fact being used by Rodney Chavez. Because this email address was used by Chavez and Ellis in furtherance of the sale of the Puerto Peñasco properties, your affiant submits that there is probable cause to believe that within this email account there exists evidence of violations of federal law, including conspiracy, wire fraud and money laundering.

24. In my training and experience, I have learned that individuals undertaking criminal activities such as those that are the subject of this investigation, including wire fraud and money laundering often taken steps to disguise themselves and avoid detection by law enforcement. These steps often include use of various communications devices, including multiple cell phones and multiple email addresses.

25. In my training and experience, I have learned that Google, Inc. provides a variety of on-line services, including electronic mail ("e-mail") access, to the general public. Google, Inc. allows subscribers to obtain e-mail accounts at the domain name Google.com, like the e-mail account listed in Attachment A. Subscribers obtain an account by registering with Google,

7



Inc. During the registration process, Google, Inc. asks subscribers to provide basic personal information. Therefore, the computers of Google, Inc. are likely to contain stored electronic communications (including retrieved and unretrieved e-mail for Google, Inc. subscribers) and information concerning subscribers and their use of Google, Inc. services, such as account access information, e-mail transaction information, and account application information.

26. In general, an e-mail that is sent to a Google, Inc. subscriber is stored in the subscriber's "mail box" on Google, Inc. servers until the subscriber deletes the e-mail. If the subscriber does not delete the message, the message can remain on Google, Inc. servers indefinitely. Even if the subscriber deletes the e-mail, it may continue to be available on Google, Inc.'s servers for a certain period of time.

27. When the subscriber sends an e-mail, it is initiated at the user's computer, transferred via the Internet to Google, Inc.'s servers, and then transmitted to its end destination. Google, Inc. often saves a copy of the e-mail sent. Unless the sender of the e-mail specifically deletes the e-mail from the Google, Inc. server, the e-mail can remain on the system indefinitely. Even if the sender deletes the e-mail, it may continue to be available on Google, Inc.'s servers for a certain period of time.

28. A sent or received e-mail typically includes the content of the message, source and destination addresses, the date and time at which the e-mail was sent, and the size and length of the e-mail. If an e-mail user writes a draft message but does not send it, that message may also be saved by Google, Inc. but may not include all of these categories of data.



29. An Google, Inc. subscriber can also store files, including e-mails, address books, contact or buddy lists, calendar data, pictures, and other files, on servers maintained and/or owned by Google, Inc.

30. Subscribers to Google, Inc. might not store on their home computers copies of the e-mails stored in their Google, Inc. account. This is particularly true when they access their Google, Inc. account through the web, or if they do not wish to maintain particular e-mails or files in their residence.

31. In general, e-mail providers like Google, Inc. ask each of their subscribers to provide certain personal identifying information when registering for an e-mail account. This information can include the subscriber's full name, physical address, telephone numbers and other identifiers, alternative e-mail addresses, and, for paying subscribers, means and source of payment (including any credit or bank account number).

32. E-mail providers typically retain certain transactional information about the creation and use of each account on their systems. This information can include the date on which the account was created, the length of service, records of log-in (i.e., session) times and durations, the types of service utilized, the status of the account (including whether the account is inactive or closed), the methods used to connect to the account (such as logging into the account via Google, Inc.'s website), and other log files that reflect usage of the account. In addition, e-mail providers often have records of the Internet Protocol address ("IP address") used to register the account and the IP addresses associated with particular logins to the account. Because every device that connects to the Internet must use an IP address, IP address information can help to identify which computers or other devices were used to access the e-mail account.

9



33.    In some cases, e-mail account users will communicate directly with an e-mail service provider about issues relating to the account, such as technical problems, billing inquiries, or complaints from other users. E-mail providers typically retain records about such communications, including records of contacts between the user and the provider's support services, as well records of any actions taken by the provider or user as a result of the communications.

34.    In my training and experience, evidence of who was using an e-mail account may be found in address books, contact or buddy lists, e-mail in the account, and attachments to e-mails, including pictures and files.

## INFORMATION TO BE SEARCHED AND THINGS TO BE SEIZED

35.    I anticipate executing this warrant under the Electronic Communications Privacy Act, in particular 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A), by using the warrant to require Google, Inc. to disclose to the government copies of the records and other information (including the content of communications) particularly described in Section I of Attachment B. Upon receipt of the information described in Section I of Attachment B, government-authorized persons will review that information to locate the items described in Section II of Attachment B.



## CONCLUSION

36. Based on the forgoing, I request that the Court issue the proposed search warrant.

37. This Court has jurisdiction to issue the requested warrant because it is "a court of competent jurisdiction" as defined by 18 U.S.C. § 2711. 18 U.S.C. §§ 2703(a), (b)(1)(A) & (c)(1)(A). Specifically, the Court is "a district court of the United States . . . that – has jurisdiction over the offense being investigated." 18 U.S.C. § 2711(3)(A)(i).

38. Pursuant to 18 U.S.C. § 2703(g), the presence of a law enforcement officer is not required for the service or execution of this warrant.

Respectfully submitted,

*[signature]*
REBEKAH J. BOTT
Special Agent
Internal Revenue Service

Subscribed and sworn to before me on ___Jan 14,___, 2013

*[signature]*
UNITED STATES MAGISTRATE JUDGE

## ATTACHMENT A

### Property to Be Searched

This warrant applies to information associated with WNCHRCH@GMAIL.COM that is stored at premises owned, maintained, controlled, or operated by Google, Inc., a company headquartered at 1600 Amphitheatre Parkway, Mountainview, CA 94043.

## ATTACHMENT B

### Particular Things to be Seized

I.     **Information to be disclosed by Google, Inc.**

To the extent that the information described in Attachment A is within the possession, custody, or control of Google, Inc., from the time period December 2009 through present, Google, Inc. is required to disclose the following information to the government for each account or identifier listed in Attachment A:

a.     The contents of all e-mails associated with the account, including stored or preserved copies of e-mails sent to and from the account, draft e-mails, deleted e-mails, emails preserved pursuant to a request made under 18 U.S.C. § 2703(f), the source and destination addresses associated with each e-mail, the date and time at which each e-mail was sent, and the size and length of each e-mail;

b.     All records or other information regarding the identification of the account, to include full name, physical address, telephone numbers and other identifiers, records of session times and durations, the date on which the account was created, the length of service, the types of service utilized, the IP address used to register the account, log-in IP addresses associated with session times and dates, account status, alternative e-mail addresses provided during registration, methods of connecting, log files, and means and source of payment (including any credit or bank account number);

c.     All records or other information stored at any time by an individual using the account, including address books, contact and buddy lists, calendar data, pictures, and files, and

including any deleted information and any information preserved pursuant to a request made under 18 U.S.C. § 2703(f);

d. All records pertaining to communications between Google, Inc. and any person regarding the account, including contacts with support services and records of actions taken.

## II. Information to be seized by the government

All information described above in Section I that constitutes fruits, evidence and instrumentalities of violations of 18 U.S.C. § 1343 (Wire Fraud) and 18 U.S.C. § 1956 (Money Laundering) involving Wayne Church, Rodney Chavez, Joshua Ellis or Alicia Gallegos, since December 2009, including, for each account or identifier listed on Attachment A, information pertaining to the following matters:

a. all communications relating to the sale of real property located in Puerto Peñasco, Mexico and the receipt or transfer of the proceeds of such sale.

b. Records relating to who created, used, or communicated with the account or identifier, including records about their identities and whereabouts.

2

